BREAUX, C. J.
The defendant is a negro who is charged with having killed his wife, Eva Minique. 1-Ie was indicted for murder.
He was tried and found guilty as charged and condemned to suffer the death penalty.
There are six bills of exceptions. The first two are substantially similar. They will be taken up together for decision.
The objection is, as brought up in those bills, that the names of the petit jurors were drawn from the box, instead of drawing them immediately from the envelope containing the names of the petit jurors drawn for the term.
The statement of the trial judge, made part of the bill of exceptions, is that the jury was fairly drawn as customary since a number of years, in the court over which he presides, from the jury box by the sheriff, who is care *1008 ful to draw them in a manner which can give no good cause for complaint.
The objection is disposed of by the text of the decision in State v. Mitchell, 119 La. 374, 44 South. 132. The court said in that case, in regard to drawing, the names of jurors:
“We consider the requirement that names of jurors be drawn from the envelope, instead of the box or other receptacle, as merely directory.”
Again quoting from the same decision:
“There is no such requirement as to petit jurors who are called upon to determine the question of the innocence or guilt of the accused.”
The record in the case before us for decision shows that the trial judge complied with the motion of counsel after the point urged had been brought to his attention. Eight jurymen had already been drawn. Their names were taken from the box. No objection had been raised. After the eighth juror had been drawn, and at that particular time the motion before mentioned was made the court ordered the drawing of the names from the envelope in which they had been placed after the general venire had been drawn, thus following the suggestion of counsel for defendant. This, it seems, was not deemed sufficient by counsel for defendant. They wished to have the eight jurors already drawn discharged and made a motion to that effect.
This motion the court declined to grant, and said that the practice had always prevailed “in this court at least for the past 10 or 12 years to place all the slips in the jury box so as to enable them to be well shaken, and that the drawing might be by chance.”
There was nothing done to which the defendant can reasonably object. Besides, no objection was timely urged.
We leave that point as presenting no ground for reversal, and take up the next, to wit, that .proof was admitted of the corpus delicti by other testimony than the inquest of the coroner.
It is true that questions in their nature preliminary were propounded to the coroner, who urns a witness on the stand testifying. The procSs verbal of the coroner’s inquest was in the hands of the district attorney, who was conducting the examination. He (the coroner) was questioned regarding the cause of death.
The objection to the question was that verbal testimony was not the best evidence.
At the time that those questions were propounded, the coroner’s inquest had not been offered in evidence. We take it that at about this time the district attorney offered the inquest to prove the cause of death.
It would have been more regular if the inquest had been offered in the first place (as soon as the objection was urged), but it does not appear that there was anything prejudicial in the questions answered. They did not contradict or add anything to the inquest. It was at most corroborative.
This court has decided that “the cause of death is not a serious issue in the case as insanity was the defense.” State v. Lyons, 113 La. 966, 37 South. 890.
We have not found any prejudicial error on this point.
The next point raised in another bill, of exceptions relates to the questions of proof of insanity. A nonexpert witness testified that defendant was sane.
The defendant objected on the ground that nonexpert witnesses were not admissible to prove sanity or to testify upon the subject at all — whether an accused is sane or insane.
The testimony of nonexpert witnesses to prove sanity was a question decided in the case of the State v. Lyons, 113 La. 962, 37 South. 890, in which the court held that there were witnesses, who, although laymen, could be heard owing to their intelligence and good judgment to testify in regard to-sanity. It *1010 is left to the court to judge whether the witness has sufficient intelligence to throw light upon the question of insanity at issue.
The witnesses who were heard, the trial judge states, were intelligent men and fairly able enough to judge as to the sanity vel non of a person. They testified that the accused (it is charged) committed the crime. The testimony of intelligent witnesses to prove sanity may be received under certain conditions. The facts observed may be stated by the witness, and opinion based on the facts observed. The counsel for defendant urged a general objection to all testimony of nonexpert witnesses. Laymen’s opinions are to-day conceded as admissible, subject to “qualifications and quibbles.” Wigmore, § 1935, No. 1938.
There was a bill of exception taken to the language used by the district attorney in his opening argument to the jury. This bill is numbered 5.
The district attorney said that the testimony of defendant was at variance with the testimony of defendant’s witnesses. This was objected to on the ground, it was argued, that the defendant had not testified.
The bill of exceptions itself does not show that the defendant did not testify. The unavoidable inference is that he did not testify.
We must say here • that bills of exceptions should completely set out all needful facts to determine the point of law.
The ground of objection particularly was that the intention was to prejudice the defense.
The trial judge, as part of the bill of exceptions, stated that the district attorney in his opening argument said that the plea of insanity was not in keeping with the testimony of defendant, saying at the time that he meant the statement of the accused made to “J. B. Frederick and testified to by the latter, in which he admitted the killing of his wife, and denied ever suspecting her of infidelity; infidelity of his wife being the alleged cause of his insanity.”
The court did not think the remark prejudicial, and, besides, charged the jury that no remark made by counsel on either side, not warranted by tne .evidence and the law as. given to them by the court, was to be considered ; that he “at the request of defendant did charge the jury that the failure of the party accused to testify should not be construed for or against him.”
By the word “failure” (that is, “failure” of the accused to testify), used above, we presume that the word “fact” was intended (that is, the fact that the party accused did not testify). No point is made of this.
Further, in regard to this bill, we will state that, in view of the explanation of the prosecuting officer which followed the word inadvertently used, as we understand, and in view of the instruction of the court, the defendant is without good ground of objection. In other words, the prosecuting officer used the word “testimony,” which was error, instead of “statement.” The error or inadvertence was corrected. It does not appear that the defendant was prejudiced, as shown by the foregoing explanation of the trial judge, sufficient to set aside any impression, if the mere inadvertence before stated caused any. It is not to be presumed that the hasty utterances of the prosecuting officer influenced the jury. They do not afford ground to set aside the verdict. The trial judge stated, as part of the bill, in effect, that the prosecuting officer meant to refer to the “statement” of the accused to officer Frederick, and not the testimony of the accused.
The next and last bill of exceptions was taken to some of the utterances of the district attorney in his closing argument. This officer said “that the evidence warrants that you make an example of this defendant.”
The judge states that at the beginning of his charge he instructed the jury to-disregard *1012 all remarks not warranted by tbe testimony, and to decide according to tbe law and tbe •evidence.
Generally, in trials before tbe court, tbe defendant, through counsel, sets out at length bis grounds of defense. He is not restricted, and is properly allowed sufficient latitude. It sometimes happens that the prosecuting ■officer, owing to zeal, which may be characterized as overzeal, goes beyond the legitimate scope of an argument, and says things which he ought not. The argument, particularly •on the part of the state, should always be as calm and deliberate as well-considered arguments require; but, if there is failure in this respect, it can give no possible ground to set aside the verdict, unless it is evident that the prosecution has gone entirely too far and gives rise to the inference that the jury in all probability was influenced.
It does not so appear here.
We have examined the different points presented. We feel constrained to affirm the judgment.
This court was not assisted by brief of counsel for the defendant. No appearance was made here on his behalf.
The law and the evidence considered, it is ordered, adjudged, and decreed that the verdict, sentence, and judgment are affirmed.